UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-2(c)

KARINA PIA LUCID, ESQ., LLC
1065 Route 22W, Suite 2B
Bridgewater, New Jersey 08807
Tel:    (908) 350-7505
Email: klucid@karinalucidlaw.com
Karina Pia Lucid, Esq.
*Counsel for debtor(s), Brian W. Mead*

In Re:

BRIAN W. MEAD

      Debtor(s).

Case No: 21-17470 (KCF)

Chapter 7 (Converted from Chapter 11)

Hearing Date: 12.14.2021 at 10:00 AM

Hon. Katherine C. Ferguson

**CERTIFICATION OF DEBTOR, BRIAN W. MEAD, (A) IN FURTHER SUPPORT OF MOTION TO RECONSIDER AND (B) LIMITING OBJECTION TO FINAL FEE APPLICATION OF SCURA, WIGFIELD, HEYER, STEVENS & CAMMAROTA, LLP, IN ACCORDANCE WITH LBR 2016-1(a)(2)(D) FOR ALLOWACE OF FEES AND <u>REIMBURSEMENT OF EXPENSES</u>**

I, Brian W. Mead (the "Debtor" or "I"), an adult of sound mind, do hereby certify  as follows:

1.      I am the Debtor in the above-referenced (A) in Further Support of the Motion to Reconsider Order Converting Case (the "Motion to Reconsider") and (B) Limiting Objection (the "Objection") to the Final Fee Application of Scura, Wigfield, Heyer, Stevens & Cammarota, LLP ("Scura"), in Accordance With LBR 2016-1(A)(2)(D) For Allowance of Fees And Reimbursement of Expenses (the "Fee Application").

**The Motion to Reconsider**

2.    First, with respect to the Motion to Reconsider, I respectfully submit that my case

should not have been converted from a Chapter 11 case to a Chapter 7 case

because I can propose and confirm a feasible and successful Chapter 11 plan, I

can show that the insurance on my properties is sufficient, and, to the extent I

failed to timely complete required submissions in the Chapter 11 case, it was not

due to my failure to cooperate but was due to a lack of proper guidance and

advice from my prior counsel.

3.    In support of my ability to propose a feasible and successful Chapter 11 plan, I

submit herewith, income projections for the 2022 fiscal year which are based

primarily upon accounts receivable ("A/R") that is either pending or reasonably

expected for my business, Touchstone Technology Consulting Ops. Inc.

("Touchstone Technology").  *See* **Exhibit A** ("**Projections**.")

4.    The Projections are submitted to show the viability to Touchstone Technology.

5.    Touchstone Technology is broken into two divisions: (I) technology services,

providing technology consulting services, and implementation services to the

Fortune 10,000, mid-market companies, including industry sectors, like

healthcare, manufacturing, and supply chain; and (II) healthcare, where we

provide Personal Protection Equipment (PPE), acting as a Supplier/Direct

relationship with our manufacturer in India.

6.    The Projections show A/R of over $1,000,000.00 and, in my opinion, the

Projections are actually quite conservative.

7.    I have been in the industry for 25 years, and have strong relationships with the

Software manufacturers, including although not limited to:

    a.    Software Vendors Touchstone Represents and id a Partner;

    b.    SAP Software, Largest Business Software Company in the world. SAP is

        installed in 90% of all Fortune 1000 Companies;

    c.    SalesForce.com,  Implementation Partner;

    d.    MicroSoft Azure Cloud Support;

    e.    Amazon Web Services (AWS) Support Partner;

    f.    I also have strong ties with India development teams for custom

        development and remote support.

8.    If permitted to continue with my intended path of a Chapter 11 case, I will be able

to show even more evidence of feasibility and that the Chapter 11 process is in the

best interests of my creditors through Monthly Operating Reports, bank

statements, and a confirmable Chapter 11 plan.

9.    Second, I have been working on a lending agreement with one of my partners in

India which will allow me to commence operating my business again.  Please find

the attached Letter of Intent from Surya Gupta, the President of RS International,

Touchstone Technology Consulting, and its Healthcare division's major sourcing,

manufacturer, and Personal Protection Equipment (PPE) Supply Chain Partner.

*See* **Exhibit B** (the "**LOI**").

10.    RS International is proposing to make a Personal Loan to me, which I will use as

a means to free up certain assets to bring to market and cover operating expenses

for my company, as well as to provide an initial distribution to creditors upon confirmation of my Chapter 11 plan.

11.    I feel very strongly that my previous Attorney, Mr. David Stevens, Esq., failed to council me on critical success factors, in presenting and successfully prosecuting a Chapter 11 case.

12.    Touchstone Technology's business and its business model is quite viable; it has a formidable business plan that provides a sustainable source of financial liquidity to support the debt reduction.

13.    A Letter of Attestation, from RS International's corporate counsel will be provided upon request.

14.    Finally, I have asked my insurance broker, Harvey Topitz, to provide additional insurance coverage for my New Jersey property.  The updated policy is attached hereto as **Exhibit C**.

15.    It is my understanding that Mr. Topitz will also be making himself available by appearing before this Court tomorrow morning for the hearing on this matter to answer any questions Your Honor may have regarding the insurance coverage.

16.    Respectfully, I ask this Honorable Court to consider these additional facts in support of the Motion to Reconsider and to reconvert my case so that I may proceed as planned with my Chapter 11 case.

**The Fee Application**

17.    First and foremost, I wish to state why I am now "limiting" the Objection to the Fee Application which was filed on my behalf.  I am embarrassed to say that, due to confusion that was caused by the way my bank posted certain transactions, it

was my sincerely held belief that I had paid the offices of Scura, Wigfield, Heyer, Stevens and Cammarota, LLP (the "Scura firm"), at least $5,000 towards legal fees plus $2,000 for expenses.  I had this belief, which unfortunately, was incorrect, because of a transaction history on my bank's website that showed that the transactions I initiated to pay fees and expenses to the Scura firm were "complete."  *See* **Exhibit D ("Transaction Records")**.

18.     I had understood that one of my attempts to make a payment to the Scura firm had failed but was certain that the other transaction did in fact go through and was "complete" as the Transaction record indicated.   However, looking at the Transaction Records more closely, it in fact appeared that both of the transfers I initiated had been completed. I thought this was concerning and I advised my current counsel of same. In fact, when I saw that, it was my belief that it meant that I had actually paid the Scura firm twice as much as I had previously believed!

19.     At the behest of my current counsel, Karina Pia Lucid Esq., I further investigated these Transaction Records.  Only today did I discover for the first time, through communications with Chase representatives, that I was mistaken.

20.     I am sincerely embarrassed about this and I am truly sorry for the confusion on this matter.

21.     Because I now know that, in truth neither of my attempts to pay the Scura firm were successful, I am withdrawing the portion of my Objection to the extent that it states that the Fee Application fails to disclose the retainer that I paid – because it was not in fact paid.

22.   However, I do not withdraw the remainder of my Objections to the Fee Application. In my opinion, David Stevens approached my case with a hands-off and deferred management style, and complete lack of interaction with me, when he was hired to provide extreme leadership within this Bankruptcy process. I hired Mr. Stevens to protect, and legally defend me and my interests and assets. Mr. Stevens was hired as a "Top Gun" Bankruptcy Attorney, a true "Thought Leader" in this legal discipline as Bankruptcy, and I believe he failed me miserably.

23.   I believe that the bulk billing practices cause much confusion and make it impossible to tell if the Scura firm engaged in excessive and/or duplicative services and such billing should not be paid as requested.

24.   Moreover, I do not believe my interests were served in accordance with the terms of my engagement with the Scura firm.

25.   I do not intend to assert that the Scura firm should to be paid at all. However, my agreement with them was for a flat fee of $10,000 plus expenses. Now they are seeking almost $5,000 more than that and I am in a Chapter 7 defending my case with new counsel.

26.   I therefore ask Your Honor to limit the fee award to a maximum of $10,000, plus expenses.

I certify that the foregoing statements made by me are true and accurate and I realize that I am subject to punishment by law for any willfully false statements.

Date:  December 13, 2021                              _/s/ Brian W. Mead_____
                                                       Brian W. Mead