| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>THE KELLY FIRM, P.C.<br>Andrew J. Kelly, Esq.<br>Bunce D. Atkinson, Esq.<br>Stephen A. Schwimmer, Esq.<br>1011 Highway 71, Suite 200<br>Spring Lake, NJ 07762<br>(732) 449-0525<br>akelly@kbtlaw.com<br>bunceatkinson@aol.com<br>sschwimmer@kbtlaw.com<br>*Attorneys for Bunce D. Atkinson,*<br>*the Chapter 7 Trustee* | |
| In Re: BRIAN W. MEAD,<br><br>                   Debtor. | Case No.: 21-17470<br><br>Chapter: 7<br><br>Judge: Hon. Michael B. Kaplan<br><br>Hearing Date: August 29, 2024<br><br>RESPONSE TO BRIAN MEAD OBJECTION TO NOTICE OF PUBLIC SALE |

**INTRODUCTION**

Chapter 7 Trustee, Bunce D. Atkinson (the "Trustee") submits this response to Debtor, Brian W. Mead's ("Debtor"), August 21, 2024 (Doc 239) objection to the Notice of Public Sale of the property known as 116 Hale Avenue White Plains, New York (the "Property"). As set forth herein, Debtor not only lacks the required standing to object to the Notice of Public Sale, but his objections are meritless and provide no basis for delaying the auction of the Property on September 19, 2024.

**ARGUMENT**

I. **Debtor Lacks Standing to Object to the Notice of Public Sale of the Property**

Debtor's objection to the Notice of Public Sale of the Property must be denied as Debtor lacks a pecuniary interest in the Property. A debtor generally lacks standing to challenge a distribution of estate assets when the debtor is not properly entitled to any possible dividend from it. In re Everett, 48 B.R. 618 (Bankr. E.D. Pa. 1985). The basis of the rule is that since the debtor is normally insolvent, he is considered to have no interest in how his assets are distributed among his creditors. Id. An exception to this general rule allows a debtor to object if the debtor can show that it is reasonably possible that a surplus will exist after debts are satisfied, or in other words, that the debtor has a pecuniary interest. Antunes v. Emigrant Mortg. Co. (In re Antunes), Nos. 15-16553-MDC, 21-00019-MDC, 2023 Bankr. LEXIS 1158 (Bankr. E.D. Pa. Apr. 30, 2023), citing, In re Toms, 229 B.R. 646 (Bankr. E.D. Pa. 1999). Since a Chapter 7 debtor is divested of all rights, title and interest in nonexempt property of the state at the commencement of the case, the debtor, in most instances, lacks any pecuniary interest in the Chapter 7 trustee's disposition of that property. Fiori v. Finkel (In re Fiori), No. 12-5128, 2013 U.S. Dist. LEXIS 141105 (E.D. Pa. Sep. 30, 2013), *citing*, Spenlinhauer v. O'Donnell, 261 F.3d 113 (1st Cir. 2001).

A debtor generally lacks standing to challenge a distribution of estate assets when the debtor is not properly entitled to any possible dividend from the assets. In re Everett, 48 B.R. 618 (Bankr. E.D. Pa. 1985). The basis of the rule is that since the debtor is normally insolvent, he is considered to have no interest in how his assets are distributed among his creditors. Id. An exception to this general rule allows a debtor to object if the debtor can show that it is reasonably possible that a surplus will exist after debts are satisfied, or in other words, that the debtor does

have a pecuniary interest. Antunes v. Emigrant Mortg. Co. (In re Antunes), Nos. 15-16553-MDC, 21-00019-MDC, 2023 Bankr. LEXIS 1158 (Bankr. E.D. Pa. Apr. 30, 2023), *citing*, In re Toms, 229 B.R. 646 (Bankr. E.D. Pa. 1999).

Here, Debtor has not and cannot establish that he has a pecuniary interest in the Property.[1] Should the Property be sold for fair market value, the proceeds will be distributed as dividends to the secured, priority, and unsecured creditors. However, while the proceeds presently in the estate and the future funds expected to be collected are significant, the funds ultimately collected by the Trsutee will not be enough to fulfill the unsecured claims in full. Accordingly, there is no reasonable possibility that the sale of the Property (combined with the other estate assets) will amount to any surplus funds. Debtor does not have a pecuniary interest in the Property, and therefore, lacks the standing to object to the Notice of Public Sale.

## II.     Mrs. Mead Entered into an Agreement Consenting to the Sale of the Property

Debtor's wife, Carolyn Mead ("Mrs. Mead"), unequivocally consented to the sale of the Property when she executed the June 30, 2024, Settlement Agreement with Trustee (the "Mrs. Mead Settlement") to have the claims brought against her in the adversary proceeding Adv. Pro. No.: 23-01244 (MBK) dismissed. A true and accurate copy of the Mrs. Mead Settlement is attached hereto as **Exhibit A**. As such, the Debtor's argument, seemingly a plea for the Court's sympathy, that Mrs. Mead relies on the rental income from the Property to survive, is unfounded. Per the terms of the Mrs. Mead Settlement, "the White Plains Property shall be sold by Auction Advisors, the engaged auctioneers for the Debtor's estate." See Exhibit A ¶ 6A. Likewise, the Mrs. Mead Settlement explicitly states that "Mead and the trustee shall split the Net Sale of

---

[1] As of August 8, 2024, the estate is holding $2,152,010 and the priority and unsecured claims (exclusive of professional administrative claims) total more than $3,400,000.  While the Trustee anticipates collecting additional funds prior to concluding his administration of the estate including the proceeds to be derived from the sale of the Property at auction, there will not be sufficient funds resulting in a surplus to the Debtor.

Proceeds of the sale of the White Plains Property…fifty percent (50%) of the Net Sale of Proceeds shall be paid to the Chapter 7 bankruptcy estate and the remaining fifty percent (50%) shall be held in escrow pending the parties agreeing in writing to the rent accounting…once the rent accounting agreed upon, the escrow shall be released to mead, less fifty percent (50%) of the estate's interest in all rentals collected." See Exhibit A ¶ 6C.

There is a strong public policy favoring the settlement of litigation. Chattin v. Cape May Greene, 216 N.J. Super. 618, 524 A.2d 841 (Super. Ct. App. Div. 1987). Absent the showing of fraud, mutual mistake, or other compelling circumstances, a court will ordinarily enforce a settlement agreement without reviewing the reasonableness of its terms. Id. *citing*, Honeywell v. Bubb, 130 N.J. Super. 130, 325 A.2d 832 (Super. Ct. App. Div. 1974).

Here, Mrs. Mead explicitly and unequivocally agreed to the sale of the Property, and therefore, her interest in the Property cannot be used as a basis for objection to the auction sale. Likewise, the terms of the Mrs. Mead Settlement are reasonable in that Mrs. Mead is entitled to her proportionate share of the proceeds from the sale of the Property as well as her proportionate share of the proceeds from the rent collected on the Property. Even if the Debtor has standing to object to the sale (he does not), he cannot object to the sale of the Property on the purported basis that any prejudice or undue hardship will be suffered by Mrs. Mead, because Mrs. Mead not only agreed to the sale of the Property but will also be paid her proportionate share of the proceeds from same.

### III. Debtor's Daughter, Along with Anyone Else, may Participate if She can Qualify as an Arms-Length Good Faith Purchaser for Value in the Auction

Debtor's contention that his daughter requires time to work through the process and show ability to pay for the Property is not a sufficient basis to object to the Notice of Sale of the Property. In the present matter, Debtor's daughter, along with any other qualified buyer, is free

to participate in the auction and purchase the Property from the estate provided she qualifies as an arms-length purchaser for value and she can identify an independent source of funds supporting any bid. However, the apparent and unsupported attempt of Debtor's daughter to secure funding to purchase the Property is not a reason to delay the auction.

**IV.    Debtor has Shown No Progress in Challenging the IRS Claims for Several Years**

Debtor seeks to delay the auction of the Property by sixty (60) days to allow for his counsel to engage in settlement discussions with the IRS. Despite Debtor's contention, Debtor has indicated for several years that intends to settle the IRS claims, and several years later, Debtor has made no apparent progress. This intent to settle with the IRS claim is a tired, hollow refrain echoing through this bankruptcy proceeding since its inception. Nothing in the record supports delaying the auction sale for an additional sixty (60) days to permit the Debtor time to negotiate with the IRS. Delaying the auction an additional sixty (60) days will only delay the inevitable to the detriment of the Debtor's creditors.

**V.    The RW Barnabas Hospital and Inpira Medical Proof of Claims are both still of Record.**

Debtor cannot delay the auction of the Property based on his alleged settlement agreements with creditors, RW Barnabas Hospital and Inspira Medical. Furthermore, upon information and belief, Debtor has misstated the terms of his settlement agreement with Inspira Medical and likely RW Barnabas Hospital too. For example, while Debtor's objection to the auction sale claims he has a six-year payment plan with Inspira, the August 25, 2022, stipulation of settlement (ECF. No. 12) states that Debtor had until December 31, 2022 to pay Inspira Medical $100,000.00 and until December 31, 2023 to pay Inspira Medical another $140,000.00 for a total compromise settlement of $240,000.00. Upon information and belief, no payments were made by

Debtor to Inspira Medical. Therefore, Inspira Medical continues to hold its full proof of claim of $703,125.00 and a corresponding nondischargeable judgment.

In any event, both the RW Barnabas Hospital and Inspira Medical proof of claims are still of record. To the Trustee's knowledge these creditors expect to be paid their pro rata share of the proceeds from the sale of the estate, and the funds in the estate will include the estate's interest in the action sale proceeds from the Property. Any delay in the auction of the Property will be to these creditors' own detriment, a result they are not requesting.

In actuality, the Debtor has been non-cooperative with the Trustee throughout the Chapter 7 case, and his objection to the auction sale motion serves only as an example of his latest dilatory conduct.

## CONCLUSION

Trustee respectfully submits that Debtor lacks standing to object to the Notice of Public Sale of the Property and any delay of the auction of the Property is unlawful. In addition to not having the standing to object to the auction of the Property, Debtor's reasoning for objecting to the Notice of Public Sale fails to establish a sufficient basis for delaying the public auction of the Property.

          **THE KELLY FIRM, P.C.**
          **Attorneys for Bunce D. Atkinson,**
          **The Chapter 7 Trustee**

BY:   */s/ Stephen A. Schwimmer*
        **STEPHEN A. SCHWIMMER**

Dated: August 26, 2024

# EXHIBIT "A"

## SETTLEMENT AGREEMENT

This settlement agreement (this "**Agreement**") is entered into as of the ___ day of May, 2024 (the "**Effective Date**"), by and between Bunce D. Atkinson, solely in his capacity as Chapter 7 Trustee (the "**Trustee**") for the bankruptcy estate of Brian W. Mead (the "**Debtor**"), on the one hand, and Cathleen Mead ("**Mead**"), on the other hand.  The Trustee, together with Mead, are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**".

## RECITALS

A.   On September 23, 2021, the Debtor filed a petition for relief under Chapter 11 of Title 11, United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Court**") commencing case number 21-17470 (MBK) (the "**Bankruptcy Case**").

B.   On November 2, 2021, the Court converted the Bankruptcy Case from one under Chapter 11, to a liquidation proceeding under Chapter 7 of the Bankruptcy Code, and, thereafter the Trustee was appointed as Chapter 7 trustee for the Debtor's bankruptcy estate, and has since duly qualified and is the permanent trustee.

C.   Mead and the Debtor are a married couple and currently reside at 8 Beaver Brook Road, Ridgefield, CT 06877 (the "**Connecticut Property**"), which is owned 50% by Mead and 50% by the Debtor.

D.   Mead and the Debtor also own a property with an address of 116 Hale Avenue, White Plains, NY 10605 (the "**White Plains Property**" and together with the Connecticut Property, the "**Real Properties**"), which is owned 50% by Mead and 50% by the Debtor.

E.   On September 7, 2023, the Trustee filed a complaint against Mead in the Court Debtor commencing an adversary proceeding under Case No. 23-01244 (MBK), whereby, among other relief, because partition of the Real Properties is not feasible, the Trustee seeks to sell the Real Properties under Bankruptcy Code §363(h) (the "**Litigation**").

F.   On April 29, 2022, Mead turned over the sum of $505,600.00 to the Trustee representing funds belonging to the Debtor which the Parties agree constitute property of the bankruptcy estate under 11 U.S.C. §541 (the "**Funds**").

G.   Following extensive negotiations, and to avoid, among other things, the expense, inconvenience, distraction and uncertainty of litigation, the Parties have agreed to settle and resolve the Litigation and any other claims the Trustee (as representative of the Debtor's estate) may have in or to the Real Properties, on the terms and conditions set forth herein, and by this Agreement.  It is the intention of the Parties that all matters in controversy among them in connection with the Real Properties and the Litigation, be settled and resolved without further delay, uncertainty, and continued expense, including any further proceedings before this Court.

Page 1 of 6

H.      Nothing contained in this Agreement shall serve as an admission of any kind or nature of any wrongdoing of any kind or nature by any Party hereto.

**NOW, THEREFORE**, in consideration of the mutual covenants, undertakings and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1.      <u>Incorporation of Recitals</u>.  The preceding preamble and recitals, as well as, the attached Exhibits are incorporated herein and form a material part of this Agreement as if set forth herein at length.

2.      <u>Effectiveness of this Agreement</u>.  Upon full execution of this Agreement and the attached Exhibits, this Agreement shall become effective and binding as to all Parties, as more fully set forth herein, subject to the entry of the Approval Order (defined below).

3.      <u>Bankruptcy Rule 9019; 363 Sale</u>.

   a.      This Agreement is contingent upon the entry of the Approval Order.  Within ten (10) business days of the execution of this Agreement by all Parties, the Trustee will cause a motion to be filed with the Bankruptcy Court under Bankruptcy Rule 9019 seeking approval of this Agreement (the "**9019 Motion**").  As used herein, the term "**Approval Order**" shall mean an order of the Bankruptcy Court approving the 9019 Motion and this Agreement, which has become final and non-appealable.

   b.      Following the filing of the 9019 Motion, or as part thereof, the Trustee shall also seek authority from the Court to sell the White Plains Property under, among others, Bankruptcy Code §363.

4.      <u>Connecticut Property</u>.  Upon entry of the Approval Order, all of the Debtor's estate's interests in and to the Connecticut Property shall be abandoned under Bankruptcy Code §554(a) and Bankruptcy Rule 6007.

5.      <u>Accounting for Rents</u>.  Within five (5) business days of the entry of the Approval Order, Mead shall present to the Trustee a full and accurate accounting of rents received from the tenant(s) of the White Plains Property (the "**Rent Accounting**").  Additionally, Mead shall update the Rent Accounting within five (5) business days of the conclusion of the Auction (defined below).

6.      <u>White Plains Property</u>.

   a.      The White Plains Property shall be sold by Auction Advisors, the engaged auctioneers for the Debtor's estate.

   b.      All fees, costs, and expenses associated with the sale of the White Plains Property, including, without limitation, administration expenses including, but not limited to, (i) fees and costs of Auction Advisors, (ii) any costs and expenses for repairs for the White Plains Property prior to sale, (iii) costs of securing the White Plains Property, (iv) payment of

any municipal or county real estate taxes, (iv) sewer and water charges , (v) payoff of any liens, claims or encumbrances on the White Plains Property, (vi) payment of closing costs associated with the sale, and (iv) any costs, expenses, or fees including attorney fees and costs associated with the White Plains Property being sold vacant (should that be a condition of the sale), which may mean evicting and removing any holdover tenants and other occupants (collectively, the "**Trustee's Costs**") shall be paid from the proceeds of sale at Closing as defined below in Section 6(c).

        c.      Mead and the Trustee shall split the Net Sale Proceeds (defined below) of the sale of the White Plains Property as set forth in this Section 6(c). Within five (5) business days of the Closing Date (defined below), the Trustee will provide Mead an accounting of the Net Sale Proceeds (the "**Sale Accounting**"). As used herein, the term "**Net Sale Proceeds**" shall mean: (a) the gross sale proceeds from the sale of the White Plains Property, less (b) the Trustee's Costs. Fifty percent (50%) of the Net Sale Proceeds shall be paid to the Chapter 7 bankruptcy estate and the remaining fifty percent (50%) shall be held in escrow (the "**Escrow**") pending the Parties agreeing in writing to the Rent Accounting. Once the Rent Accounting is agreed upon, the Escrow shall be released to Mead less fifty percent (50%) of the estate's interest in all rentals collected or due to the Debtor and Mead from the White Plains Property as set forth in the Rent Accounting within five (5) business days of the final approval and determination of the Rent Accounting (the "**Escrow Release Date**").

        d.      Prior to the conclusion of the Auction, in the event that it is determined that the Trustee has collected sufficient monies from his liquidation of the Debtor's assets to satisfy all claims against the estate in full, including administrative claims and the Trustee's commissions, then, at Mead's sole discretion, the Auction may be canceled and the Trustee shall abandon the White Plains Property to the Debtor. In such an event, Mead and the Debtor shall be responsible to reimburse Auction Advisors for any costs and expenses incurred as of the date of cancelation, plus one percent (1%) commission on the agreed starting bid for the Auction, payable in advance of any cancelation of the Auction.

        e.      As used herein, the term "**Closing Date**" shall be the date when the sale of the White Plains Property is concluded and title has past from the estate to the successful purchaser from the Auction.

    7.    <u>Litigation Stay</u>. Upon execution of this Agreement, and pending submission of the 9019 Motion, the Parties agree that the Litigation shall be stayed pending the entry of the 9019 Order, including Mead's time to answer the Complaint. The foregoing stay shall be lifted within two (2) business days of the entry of an Order denying the approval of this Agreement. The Parties further agree that none of them will institute any new litigation or other claims or suits against the other during the pendency of the 9019 Motion.

    8.    <u>Releases</u>. The Parties agree to the following releases (collectively, the "**Releases**"):

        a.      *Trustee's Release of Mead.* On the Escrow Release Date, the Trustee for himself and on behalf of the Debtor's estate and its creditors, as well as, their respective attorneys, successors and/or assigns (collectively, the "**Trustee Parties**") hereby fully and irrevocably release Mead, as well as, her attorneys, heirs, executors, administrators, agents,

trustees, insurers, successors and assigns (collectively, the "**Mead Parties**") from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, related to the Connecticut Property, the White Plains Property, the Litigation, the rents related to the White Plains Property, and the Funds. Nothing in this Section 8(a) shall release Mead or any Mead Party from any breach of any obligations under this Agreement.

        b.    *Mead's Release to the Trustee*.  On the Escrow Release Date, Mead for herself and the Mead Parties, hereby fully and irrevocably release each of the Trustee Parties, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, related to the Connecticut Property, the White Plains Property, the Litigation, the rents related to the White Plains Property, the Funds, and any claims against the Chapter 7 bankruptcy estate of Brian Mead. Nothing in this Section 8(b) shall release the Trustee or any Trustee Party from any breach of any obligation under this Agreement.

        c.    <u>Dismissal of the Litigations</u>.  Within ten (10) days of the Escrow Release Date, the Litigation shall be dismissed by the Trustee with prejudice. Without affecting the finality of the Approval Order, the Court shall retain continuing jurisdiction over this Agreement and the Parties, the administration and enforcement of this Agreement, including for such purposes as supervising the implementation, enforcement, construction, and interpretation of this Agreement and the Approval Order. Any dispute or controversies arising with respect to the interpretation, enforcement, or implementation of this Agreement shall be presented by motion, including a motion to reopen the Litigation (if necessary).

9.    <u>Intentionally Omitted.</u>

10.    <u>Consent to Jurisdiction</u>. Any action or proceeding relating in any way to this Agreement shall be brought in the Court, and each of the Parties hereby irrevocably submit to the jurisdiction of said courts for all purposes.

11.    <u>Binding Effect</u>. On the Effective Date, this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors, assigns, representatives, heirs, executors, administrators, trustees, attorneys, and receivers, as the case may be, except that this Agreement shall be null and void and of no further effect in the case of either or both of the following: (i) the Court entering and Order denying approval of this Agreement; or (ii) the Court failing to approve the Sale of the White Plains Property.

12.    <u>Amendments and Modifications</u>. This Agreement may not be amended or modified in any respect except by another instrument in writing executed by the Parties hereto, and no waiver of any provision contained in this Agreement, or any future representation, promise or condition regarding the subject matter of this Agreement, shall be binding upon any Party unless made in writing and signed by such Party.

13. <u>Due Authorization</u>. Each Party represents to the others that its execution, delivery and performance of this Agreement are within the power and authority of such party and have been duly authorized by such Party. The Parties represent that they have not assigned or otherwise transferred to any other person or entity any such rights and interest in the claims set forth herein, or in the Complaint.

14. <u>Parties Represented by Counsel, If Any</u>. Each Party acknowledges that he or he has read this Agreement, and that he or she is entering into the Agreement of his or her own free will and not as a result of any duress, coercion or undue influence. Each Party acknowledges having had the opportunity to discuss this Agreement with their respective attorneys, and that they have availed themselves of that opportunity, to the extent they have desired to do so. Each Party represents and warrants he or she is fully aware of this Agreement's contents and legal effect. Moreover, each Party acknowledges that he or it is receiving valuable and adequate consideration under this Agreement for the promises and covenants made hereby.

15. <u>Attorneys' Fees and Costs</u>. Each Party will bear its own attorneys' fees and costs incurred in connection with the negotiation and preparation of this Agreement. In any litigation by which any Party seeks to enforce its rights under this Agreement or seeks a declaration of rights under this Agreement, the prevailing Party or Parties will be awarded its or their reasonable attorneys' fees, costs and expenses incurred as against the non-prevailing Party or Parties.

16. <u>Construction</u>. This Agreement has been fully and freely negotiated by the Parties, and this Agreement shall be considered as having been drafted jointly by the Parties, and shall be interpreted and construed as if so drafted, without construction in favor of or against any Party on account of its participation in the drafting of this Agreement.

17. <u>Counterparts; Effectiveness</u>. This Agreement and any Exhibit hereto may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when counterparts have been signed by each Party and delivered to each other Party. In the event that any signature is delivered by facsimile transmission or by electronic means, such signature page shall create a valid and binding obligation of the Party executing (or on whose behalf such signature is executed) with the same force and effect as if such signature page were an original thereof.

18. <u>Governing Law</u>. Except as set forth herein, this Agreement shall be governed by and construed in accordance with the internal laws of the State of New Jersey, without regard to the conflict of laws rules thereof.

19. <u>Complete Agreement</u>. This Agreement (including all Exhibits) represents the complete agreement of the Parties with respect to the subject matter thereof and supersedes any and all previous agreements of any kind whatsoever between them, whether written or oral. All prior and contemporaneous discussions and negotiations have been and are merged into, and are superseded by, this Agreement. This Agreement is an integrated document.

20. <u>Headings</u>. The headings in this Agreement are solely for the convenience of the Parties and cannot be used to interpret this Agreement.

21. <u>Further Assurances</u>. Each of the parties shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments and documents, as the other party may reasonably request in order to carry out the intent and accomplish the purposes of this Agreement and the consummation of the transactions contemplated hereby.

22. <u>Interest in Claims</u>. The Parties represent and warrant that no person or entity has, or has had, any interest in the claims and matters being released pursuant to this Agreement and that the Parties have the sole right, power and exclusive authority to enter into and execute this Agreement, and to receive the benefits specified in this Agreement.

23. <u>Perpetual Agreement</u>. This Agreement and Releases shall continue perpetually and shall be binding on the Parties and inure to the benefit of their respective representatives, agents, attorneys, principals, successors, and assigns.

24. <u>Intentionally Omitted.</u>

25. <u>Severability</u>. Whenever possible, each paragraph of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision is held to be prohibited or invalid, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the other remaining provisions of this Agreement and the Releases.

26. <u>Singular and Plural.</u> Whenever the context shall require, the singular shall include the plural, the plural shall include the singular, and words of any gender shall be deemed to include words of any other gender.

27. <u>Waiver or Modification.</u> This Agreement sets forth the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements or understandings, whether oral or written, with respect to such subject matter. No provision or term of this Agreement may be amended, modified, revoked, supplemented, waived or otherwise changed except by written instrument duly executed by each of the parties hereto.

**IN WITNESS WHEREOF,** this Agreement has been duly executed and delivered as of the Effective Date.

| | |
|---|---|
| **Bunce D. Atkinson,** solely in his capacity as Trustee of the bankruptcy Estate of Brian W. Mead | **Cathleen Mead, individually** |
| *DocuSigned by:* *Bunce D Atk* F8BB219CDF6A4DA... | *DocuSigned by:* *Cathleen Mead* 5112D797AB3B44D... |
| **BUNCE D. ATKINSON** | **CATHLEEN MEAD** |

Page 6 of 6