**THE KELLY FIRM, P.C.**
Andrew J. Kelly, Esq.
Bunce D. Atkinson, Esq.
Stephen A. Schwimmer, Esq.
Coast Capital Building
1011 Highway 71, Suite 200
Spring Lake, New Jersey 07762
(732) 449-0525
akelly@kbtlaw.com
bunceatkinson@aol.com
sschwimmer@kbtlaw.com
*Attorneys for the Trustee, Bunce D. Atkinson, Esq.*

| | |
|---|---|
| IN RE:<br>BRIAN W. MEAD<br><br>Debtor. | UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>CASE NO. 21-17470 MEH<br><br>**CERTIFICATION IN FURTHER SUPPORT OF NOTICE OF MOTION TO APPROVE SALE BY PUBLIC AUCTION & IN REPLY TO DEBTOR'S OBJECTION AND U.S. BANK'S LIMITED RESPONSE**<br><br>Hearing Date: October 28, 2024 @ 10:00 a.m. |

Bunce D. Atkinson, of full age, does hereby certify as follows:

1. I am the Chapter 7 Trustee for Brian W. Mead (hereinafter "Mead" and/or "the Debtor") and I am fully familiar with facts contained herein.

2. A Notice of Proposed Public Sale by Auction of real property was filed by me on July 27, 2024. See ECF No. 237. The notice provided that the auction sale would take place on September 19, 2024, at 11:00 a.m. at the property location, 116 Hale Avenue, White Plains, New York, 10605, (the "Property"). Id.

Debtor:   Brian W. Mead

Case No.:   21-17470

Caption:   Certification in Further Support of Notice of Motion of Approve Sale By Public Auction & in Reply to Debtor's Objection and US Bank's Limited Response
_____

3. An objection to the auction sale of the Property was filed by the Debtor. See ECF No. 239. I filed a response which included that the co-owner of the Property, Debtor's non-Debtor spouse, Cathleen Mead ("Mrs. Mead") had consented to the sale. See ECF No. 243. The objection was overruled by the Court on September 6, 2024. See ECF No. 253.

4. The auction of the Property was held on September 19, 2024, and a final bid of $495,000 was made by Elisjon Vacaj, ("Vacaj").

5. Vacaj has no personal or business relationship with the attorneys for the Trustee, the Trustee or the Auctioneer, the Debtor, Cathleen Mead, and is not a creditor of the Debtor's Estate.  Following the conclusion of the auction, Vacaj signed a Contract of Sale, ("the Contract"), which incorporated by reference all the terms of the auction.

6. Pursuant to the terms of the Contract, Vacaj delivered an initial deposit of $49,500.

7. On October 1, 2024, through counsel, the Trustee filed the instant Motion to Sell Property Free and Clear of Liens under Section 363(f) (the "Trustee Motion"). See ECF No. 264.

**DEBTOR'S OBJECTION**

8. On October 18, 2024, Debtor filed an objection to the Trustee Motion seeking to upend the sale of the Property by proposing that his daughter, Taylor Mead ("Taylor")[1] purchase the "half [of the Property] that is not part of the agreement with [Debtor's] wife." See Debtor's Objection, ECF No. 269. This proposal is unacceptable, and Debtor's objection

---

[1] Because Taylor Mead has the same surname as the Debtor and his wife, I refer to Taylor Mead by her first name, intending no disrespect.

Debtor:    Brian W. Mead

Case No.:    21-17470

Caption:    Certification in Further Support of Notice of Motion of Approve Sale By Public Auction & in Reply to Debtor's Objection and US Bank's Limited Response
_____

directly contradicts the Trustee's settlement with Mrs. Mead which resolved the Adversary Proceeding 23-1244-MBK, *Bunce D. Atkinson, Trustee for Debtor Estate of Brian W. Mead v. Cathleen Mead* (the "Settlement Agreement"). A copy of the Order Approving the Settlement Agreement including the signed Settlement Agreement is attached hereto as Exhibit "A".

9. The Court should grant the Trustee Motion because Vacaj's offer is simply stronger and less dubious than Taylor's offer. Taylor's preapproval expressly states that it is not a commitment and subject to review of Taylor's creditworthiness and verifications of the information and documentation provided. See ECF No. 269-1, Exhibit A. Additionally, Taylor's conditional preapproval is flawed in that it is for the purchase of a single-family home, and the Property is a rental property. Id. Of primary importance, however, is the fact that Taylor is only offering to purchase a one-half (½) interest in the Property whereas Vacaj will purchase full ownership of the Property. See ECF No. 269-1 ¶ 5.

10. Finally, Vacaj's offer is unarguably stronger than Taylor's in that Taylor's offer does not propose any deposit while Vacaj has already delivered a deposit of $49,500.

11. Accordingly, the Trustee respectfully requests that the Court allow Trustee to effectuate the terms of the Contract agreed upon with Vacaj and deny the request for the Court to redraft an agreement as set forth in Debtor's objection.

12. Regarding Debtor's argument that he relies on the income produced from renting the Property, Debtor has maintained that his wife, Mrs. Mead, has always received said income. As part of the Settlement Agreement, Mrs. Mead expressly consented to the sale of

Page 4

Debtor:     Brian W. Mead

Case No.:   21-17470

Caption:   Certification in Further Support of Notice of Motion of Approve Sale By Public Auction & in Reply to Debtor's Objection and US Bank's Limited Response
_____

the Property, providing Trustee with an accounting of the rent, and payment of one-half (½) of the rent to the Debtor Estate. See Exhibit "A".

13.   It should be further noted that Mrs. Mead previously bid on the sale of Debtor's other property known as 127 Hale Avenue, White Plains, New York ("127 Hale"), and she did not have the ability to close on that property. This caused a delay and led the Trustee to return to the market to find new bidders. By then, the previous high bidder had walked away, and the Debtor Estate was clearly prejudiced. Should the sale of the Property be subject to a similar fate, it would undoubtedly cause additional prejudice to the Debtor Estate.

14.   Similarly relevant for the Court's consideration is the fact that Mrs. Mead ultimately had to forfeit the deposit she gave for the sale of 127 Hale because it was determined to be sourced from undisclosed funds of the Debtor. Since Vacaj has no connection to the Debtor Estate whatsoever, the sale to Vacaj has no risk that the Property will be purchased in whole or in part using Debtor's funds.

15.   Finally, since Your Honor has recently been assigned to this matter, the Trustee is compelled to add that Debtor has been playing fast and loose with regard to his bankruptcy proceedings. In Debtor's October 14, 2021, Amended Petition (the "Amended Petition"), Debtor only disclosed that he owned the Property (116 Hale Avenue) but failed to disclose his ownership in 127 Hale. See ECF No. 15.

16.   In yet another audacious example of deceit, Debtor only disclosed ownership of the property known as 107 Locustberry Lane Jupiter, Florida (the "Locustberry Property) but failed to disclose his ownership of the property known as 134 Seagrape Drive, Unit 204,

Debtor:   Brian W. Mead

Case No.:   21-17470

Caption:   Certification in Further Support of Notice of Motion of Approve Sale By Public Auction & in Reply to Debtor's Objection and US Bank's Limited Response
_____

Jupiter, Florida (the "Seagrape Property") located in the same condominium complex. Id. Making matters worse, Debtor failed to list the tax liens on the Seagrape Property to further conceal his ownership from the Trustee. It was only through the Trustee's investigation that the Seagrape Property was discovered.

17. Furthermore, Debtor has failed to provide information regarding his late mother's estate and had initially lied about the ownership of the property known as 6 East 17th Street Beach Haven, New Jersey (the "Beach Haven Property"), indicating that it was owned jointly with his wife. Id. Given Debtor's utter lack of transparency and candor in this matter, relying on Debtor's representations to support his alternative proposal is simply not viable.

18. For the reasons discussed, the Trustee Motion to approve the sale of the Property should be granted and Debtor's attempt to set forth a subsequent offer should be denied.

**THE 90-DAY CONDITION**

19. On October 1, 2024, Secured Creditor, US Bank National Association, not in its Individual Capacity, but solely as Trustee for RCAF Acquisition Trust ("US Bank"), filed a limited response to the Trustee Motion seeking to add certain conditions to the Court's Order granting the Trustee Motion. See ECF No. 266.

20. Trustee does not object to US Bank's contention that the sale of the Property is subject to US Bank's lien until paid of in full, as the proceeds from the sale will be used to fully satisfy same.

21. However, US Bank's unlimited condition that the Order contain a provision stating failure to complete any sale within ninety (90) days of entry of this Order will result in the

Debtor:    Brian W. Mead

Case No.:    21-17470

Caption:    Certification in Further Support of Notice of Motion of Approve Sale By Public Auction & in Reply to Debtor's Objection and US Bank's Limited Response
_____

Order authorizing the sale to be deemed as moot must be denied as it is unreasonable and not supported by law.

22.    The sale price under the Contract is $495,000.00.

23.    The Estimated payoff of Secured Creditor's Lien is $72,574.30. See ECF No. 266 ¶ 4.

24.    As such, there is a substantial equity cushion in the Property, and in the unlikely event that the sale takes more than ninety (90) days to close, US Bank will not be prejudiced in any way. Accordingly, US Bank's request for a ninety (90) day condition must be denied.

25.     For the reasons discussed above and throughout the Trustee's Motion, Trustee respectfully requests that Court grant the present Motion to Sell Property Free and Clear of Liens under Section 363(f).

I hereby certify that the foregoing statements made by me are true.  If any of the foregoing statements made by me are willfully false, I am subject to punishment.

                          **THE KELLY FIRM, P.C.**
                          **Attorneys for the Trustee**

               **BY:**    /s/  *Bunce D. Atkinson*
Dated: October 25, 2024                    **BUNCE D. ATKINSON**

# EXHIBIT A



| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY |
|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>THE KELLY FIRM, P.C.<br>Andrew J. Kelly, Esq.<br>Bunce D. Atkinson, Esq.<br>Stephen A. Schwimmer, Esq.<br>1011 Highway 71, Suite 200<br>Spring Lake, NJ 07762<br>(732) 449-0525<br>akelly@kbtlaw.com<br>Bunceatkinson@aol.com<br>sschwimmer@kbtlaw.com<br>*Attorneys for Trustee, Bunce D. Atkinson, Esq.* |
| In re:<br><br>BRIAN W. MEAD,<br><br>            Debtor. |

Order Filed on October 9, 2024
by Clerk
U.S. Bankruptcy Court
District of New Jersey

Case No.: 21-17470 MBK

Adv. Case No.: 23-1244 MBK

Chapter: 7

Judge: Chief Judge, Michael B. Kaplan

Hearing Date: August 26, 2024

**ORDER APPROVING SETTLEMENT OF ADVERSARY PROCEEDING**

The relief set forth on the following pages, numbered two (2) is hereby **ORDERED**.

**DATED: October 9, 2024**

                                                    Honorable Michael B. Kaplan
                                                    United States Bankruptcy Judge

Page 2
Debtor: Brian W. Mead
Case No.: 21-17470 MBK
Adv. Case No.: 23-1244 MBK
Caption: ORDER APPROVING SETTLEMENT OF CONTROVERSY

**THIS MATTER** having been opened to the Court by The Kelly Firm P.C., attorneys for Bunce D. Atkinson, Esq., the Chapter 7 Trustee of the Debtor Estate of Brian W. Mead (the "Debtor"), on a Notice of Motion to Approve a Settlement of Controversy; and notice having been provided to all interested parties; and the Court having considered the pleadings filed herein, heard the argument of counsel, if any; and for the reasons set forth on the record, and for good cause shown,

It is **ORDERED** as follows:

1. The settlement of controversy in Adversary Proceeding No. 23-1244, settling the Debtor Estate's claims against the Defendant, Cathleen Mead, for the consideration and in accordance with the terms enumerated in **Exhibit A** to the Trustee's Motion to Approve Settlement, is hereby approved.

2

# EXHIBIT

# A

## SETTLEMENT AGREEMENT

This settlement agreement (this "**Agreement**") is entered into as of the ___ day of May, 2024 (the "**Effective Date**"), by and between Bunce D. Atkinson, solely in his capacity as Chapter 7 Trustee (the "**Trustee**") for the bankruptcy estate of Brian W. Mead (the "**Debtor**"), on the one hand, and Cathleen Mead ("**Mead**"), on the other hand. The Trustee, together with Mead, are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**".

## RECITALS

A.   On September 23, 2021, the Debtor filed a petition for relief under Chapter 11 of Title 11, United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of New Jersey (the "**Court**") commencing case number 21-17470 (MBK) (the "**Bankruptcy Case**").

B.   On November 2, 2021, the Court converted the Bankruptcy Case from one under Chapter 11, to a liquidation proceeding under Chapter 7 of the Bankruptcy Code, and, thereafter the Trustee was appointed as Chapter 7 trustee for the Debtor's bankruptcy estate, and has since duly qualified and is the permanent trustee.

C.   Mead and the Debtor are a married couple and currently reside at 8 Beaver Brook Road, Ridgefield, CT 06877 (the "**Connecticut Property**"), which is owned 50% by Mead and 50% by the Debtor.

D.   Mead and the Debtor also own a property with an address of 116 Hale Avenue, White Plains, NY 10605 (the "**White Plains Property**" and together with the Connecticut Property, the "**Real Properties**"), which is owned 50% by Mead and 50% by the Debtor.

E.   On September 7, 2023, the Trustee filed a complaint against Mead in the Court Debtor commencing an adversary proceeding under Case No. 23-01244 (MBK), whereby, among other relief, because partition of the Real Properties is not feasible, the Trustee seeks to sell the Real Properties under Bankruptcy Code §363(h) (the "**Litigation**").

F.   On April 29, 2022, Mead turned over the sum of $505,600.00 to the Trustee representing funds belonging to the Debtor which the Parties agree constitute property of the bankruptcy estate under 11 U.S.C. §541 (the "**Funds**").

G.   Following extensive negotiations, and to avoid, among other things, the expense, inconvenience, distraction and uncertainty of litigation, the Parties have agreed to settle and resolve the Litigation and any other claims the Trustee (as representative of the Debtor's estate) may have in or to the Real Properties, on the terms and conditions set forth herein, and by this Agreement. It is the intention of the Parties that all matters in controversy among them in connection with the Real Properties and the Litigation, be settled and resolved without further delay, uncertainty, and continued expense, including any further proceedings before this Court.

H.    Nothing contained in this Agreement shall serve as an admission of any kind or nature of any wrongdoing of any kind or nature by any Party hereto.

**NOW, THEREFORE**, in consideration of the mutual covenants, undertakings and promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree as follows:

1.    <u>Incorporation of Recitals</u>. The preceding preamble and recitals, as well as, the attached Exhibits are incorporated herein and form a material part of this Agreement as if set forth herein at length.

2.    <u>Effectiveness of this Agreement</u>. Upon full execution of this Agreement and the attached Exhibits, this Agreement shall become effective and binding as to all Parties, as more fully set forth herein, subject to the entry of the Approval Order (defined below).

3.    <u>Bankruptcy Rule 9019; 363 Sale</u>.

   a.    This Agreement is contingent upon the entry of the Approval Order. Within ten (10) business days of the execution of this Agreement by all Parties, the Trustee will cause a motion to be filed with the Bankruptcy Court under Bankruptcy Rule 9019 seeking approval of this Agreement (the "**9019 Motion**"). As used herein, the term "**Approval Order**" shall mean an order of the Bankruptcy Court approving the 9019 Motion and this Agreement, which has become final and non-appealable.

   b.    Following the filing of the 9019 Motion, or as part thereof, the Trustee shall also seek authority from the Court to sell the White Plains Property under, among others, Bankruptcy Code §363.

4.    <u>Connecticut Property</u>. Upon entry of the Approval Order, all of the Debtor's estate's interests in and to the Connecticut Property shall be abandoned under Bankruptcy Code §554(a) and Bankruptcy Rule 6007.

5.    <u>Accounting for Rents</u>. Within five (5) business days of the entry of the Approval Order, Mead shall present to the Trustee a full and accurate accounting of rents received from the tenant(s) of the White Plains Property (the "**Rent Accounting**"). Additionally, Mead shall update the Rent Accounting within five (5) business days of the conclusion of the Auction (defined below).

6.    <u>White Plains Property</u>.

   a.    The White Plains Property shall be sold by Auction Advisors, the engaged auctioneers for the Debtor's estate.

   b.    All fees, costs, and expenses associated with the sale of the White Plains Property, including, without limitation, administration expenses including, but not limited to, (i) fees and costs of Auction Advisors, (ii) any costs and expenses for repairs for the White Plains Property prior to sale, (iii) costs of securing the White Plains Property, (iv) payment of

Case 21-17470-MEH    Doc 271    Filed 10/25/24    Entered 10/25/24 13:47:17    Desc Main
Document    Page 13 of 16

DocuSign Envelope ID: 72358AB1-B55D-4436-BED8-C5942F94DD6
Case 23-01244-MBK    Doc 9    Filed 10/09/24    Entered 10/09/24 13:07:02    Desc Main
Document    Page 6 of 9

any municipal or county real estate taxes, (iv) sewer and water charges, (v) payoff of any liens, claims or encumbrances on the White Plains Property, (vi) payment of closing costs associated with the sale, and (iv) any costs, expenses, or fees including attorney fees and costs associated with the White Plains Property being sold vacant (should that be a condition of the sale), which may mean evicting and removing any holdover tenants and other occupants (collectively, the "**Trustee's Costs**") shall be paid from the proceeds of sale at Closing as defined below in Section 6(c).

   c.   Mead and the Trustee shall split the Net Sale Proceeds (defined below) of the sale of the White Plains Property as set forth in this Section 6(c). Within five (5) business days of the Closing Date (defined below), the Trustee will provide Mead an accounting of the Net Sale Proceeds (the "**Sale Accounting**"). As used herein, the term "**Net Sale Proceeds**" shall mean: (a) the gross sale proceeds from the sale of the White Plains Property, less (b) the Trustee's Costs. Fifty percent (50%) of the Net Sale Proceeds shall be paid to the Chapter 7 bankruptcy estate and the remaining fifty percent (50%) shall be held in escrow (the "**Escrow**") pending the Parties agreeing in writing to the Rent Accounting. Once the Rent Accounting is agreed upon, the Escrow shall be released to Mead less fifty percent (50%) of the estate's interest in all rentals collected or due to the Debtor and Mead from the White Plains Property as set forth in the Rent Accounting within five (5) business days of the final approval and determination of the Rent Accounting (the "**Escrow Release Date**").

   d.   Prior to the conclusion of the Auction, in the event that it is determined that the Trustee has collected sufficient monies from his liquidation of the Debtor's assets to satisfy all claims against the estate in full, including administrative claims and the Trustee's commissions, then, at Mead's sole discretion, the Auction may be canceled and the Trustee shall abandon the White Plains Property to the Debtor. In such an event, Mead and the Debtor shall be responsible to reimburse Auction Advisors for any costs and expenses incurred as of the date of cancelation, plus one percent (1%) commission on the agreed starting bid for the Auction, payable in advance of any cancelation of the Auction.

   e.   As used herein, the term "**Closing Date**" shall be the date when the sale of the White Plains Property is concluded and title has past from the estate to the successful purchaser from the Auction.

7.   Litigation Stay. Upon execution of this Agreement, and pending submission of the 9019 Motion, the Parties agree that the Litigation shall be stayed pending the entry of the 9019 Order, including Mead's time to answer the Complaint. The foregoing stay shall be lifted within two (2) business days of the entry of an Order denying the approval of this Agreement. The Parties further agree that none of them will institute any new litigation or other claims or suits against the other during the pendency of the 9019 Motion.

8.   Releases. The Parties agree to the following releases (collectively, the "**Releases**"):

   a.   *Trustee's Release of Mead.* On the Escrow Release Date, the Trustee for himself and on behalf of the Debtor's estate and its creditors, as well as, their respective attorneys, successors and/or assigns (collectively, the "**Trustee Parties**") hereby fully and irrevocably release Mead, as well as, her attorneys, heirs, executors, administrators, agents,

trustees, insurers, successors and assigns (collectively, the "**Mead Parties**") from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, related to the Connecticut Property, the White Plains Property, the Litigation, the rents related to the White Plains Property, and the Funds. Nothing in this Section 8(a) shall release Mead or any Mead Party from any breach of any obligations under this Agreement.

                b.    *Mead's Release to the Trustee*. On the Escrow Release Date, Mead for herself and the Mead Parties, hereby fully and irrevocably release each of the Trustee Parties, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, related to the Connecticut Property, the White Plains Property, the Litigation, the rents related to the White Plains Property, the Funds, and any claims against the Chapter 7 bankruptcy estate of Brian Mead. Nothing in this Section 8(b) shall release the Trustee or any Trustee Party from any breach of any obligation under this Agreement.

                c.    <u>Dismissal of the Litigations</u>. Within ten (10) days of the Escrow Release Date, the Litigation shall be dismissed by the Trustee with prejudice. Without affecting the finality of the Approval Order, the Court shall retain continuing jurisdiction over this Agreement and the Parties, the administration and enforcement of this Agreement, including for such purposes as supervising the implementation, enforcement, construction, and interpretation of this Agreement and the Approval Order. Any dispute or controversies arising with respect to the interpretation, enforcement, or implementation of this Agreement shall be presented by motion, including a motion to reopen the Litigation (if necessary).

    9.    <u>Intentionally Omitted.</u>

    10.    <u>Consent to Jurisdiction</u>. Any action or proceeding relating in any way to this Agreement shall be brought in the Court, and each of the Parties hereby irrevocably submit to the jurisdiction of said courts for all purposes.

    11.    <u>Binding Effect</u>. On the Effective Date, this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors, assigns, representatives, heirs, executors, administrators, trustees, attorneys, and receivers, as the case may be, except that this Agreement shall be null and void and of no further effect in the case of either or both of the following: (i) the Court entering and Order denying approval of this Agreement; or (ii) the Court failing to approve the Sale of the White Plains Property.

    12.    <u>Amendments and Modifications</u>. This Agreement may not be amended or modified in any respect except by another instrument in writing executed by the Parties hereto, and no waiver of any provision contained in this Agreement, or any future representation, promise or condition regarding the subject matter of this Agreement, shall be binding upon any Party unless made in writing and signed by such Party.

Case 21-17470-MEH    Doc 271    Filed 10/25/24    Entered 10/25/24 13:47:17    Desc Main
Document    Page 15 of 16

DocuSign Envelope ID: 72758AB1-B55D-4136-BEB8-C5042F94DD1D
Case 23-01244-MBK    Doc 9    Filed 10/09/24    Entered 10/09/24 13:07:02    Desc Main
Document    Page 8 of 9

13. <u>Due Authorization</u>. Each Party represents to the others that its execution, delivery and performance of this Agreement are within the power and authority of such party and have been duly authorized by such Party. The Parties represent that they have not assigned or otherwise transferred to any other person or entity any such rights and interest in the claims set forth herein, or in the Complaint.

14. <u>Parties Represented by Counsel, If Any</u>. Each Party acknowledges that he or he has read this Agreement, and that he or she is entering into the Agreement of his or her own free will and not as a result of any duress, coercion or undue influence. Each Party acknowledges having had the opportunity to discuss this Agreement with their respective attorneys, and that they have availed themselves of that opportunity, to the extent they have desired to do so. Each Party represents and warrants he or she is fully aware of this Agreement's contents and legal effect. Moreover, each Party acknowledges that he or it is receiving valuable and adequate consideration under this Agreement for the promises and covenants made hereby.

15. <u>Attorneys' Fees and Costs</u>. Each Party will bear its own attorneys' fees and costs incurred in connection with the negotiation and preparation of this Agreement. In any litigation by which any Party seeks to enforce its rights under this Agreement or seeks a declaration of rights under this Agreement, the prevailing Party or Parties will be awarded its or their reasonable attorneys' fees, costs and expenses incurred as against the non-prevailing Party or Parties.

16. <u>Construction</u>. This Agreement has been fully and freely negotiated by the Parties, and this Agreement shall be considered as having been drafted jointly by the Parties, and shall be interpreted and construed as if so drafted, without construction in favor of or against any Party on account of its participation in the drafting of this Agreement.

17. <u>Counterparts; Effectiveness</u>. This Agreement and any Exhibit hereto may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when counterparts have been signed by each Party and delivered to each other Party. In the event that any signature is delivered by facsimile transmission or by electronic means, such signature page shall create a valid and binding obligation of the Party executing (or on whose behalf such signature is executed) with the same force and effect as if such signature page were an original thereof.

18. <u>Governing Law</u>. Except as set forth herein, this Agreement shall be governed by and construed in accordance with the internal laws of the State of New Jersey, without regard to the conflict of laws rules thereof.

19. <u>Complete Agreement</u>. This Agreement (including all Exhibits) represents the complete agreement of the Parties with respect to the subject matter thereof and supersedes any and all previous agreements of any kind whatsoever between them, whether written or oral. All prior and contemporaneous discussions and negotiations have been and are merged into, and are superseded by, this Agreement. This Agreement is an integrated document.

20. <u>Headings</u>. The headings in this Agreement are solely for the convenience of the Parties and cannot be used to interpret this Agreement.

Case 21-17470-MEH    Doc 271    Filed 10/25/24    Entered 10/25/24 13:47:17    Desc Main
Document    Page 16 of 16

DocuSign Envelope ID: 72758AB1-B55D-4436-BEB8-C5042P9467D8
Case 23-01244-MBK    Doc 9    Filed 10/09/24    Entered 10/09/24 13:07:02    Desc Main
Document    Page 9 of 9

21. <u>Further Assurances.</u> Each of the parties shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements, certificates, instruments and documents, as the other party may reasonably request in order to carry out the intent and accomplish the purposes of this Agreement and the consummation of the transactions contemplated hereby.

22. <u>Interest in Claims.</u> The Parties represent and warrant that no person or entity has, or has had, any interest in the claims and matters being released pursuant to this Agreement and that the Parties have the sole right, power and exclusive authority to enter into and execute this Agreement, and to receive the benefits specified in this Agreement.

23. <u>Perpetual Agreement.</u> This Agreement and Releases shall continue perpetually and shall be binding on the Parties and inure to the benefit of their respective representatives, agents, attorneys, principals, successors, and assigns.

24. <u>Intentionally Omitted.</u>

25. <u>Severability.</u> Whenever possible, each paragraph of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision is held to be prohibited or invalid, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the other remaining provisions of this Agreement and the Releases.

26. <u>Singular and Plural.</u> Whenever the context shall require, the singular shall include the plural, the plural shall include the singular, and words of any gender shall be deemed to include words of any other gender.

27. <u>Waiver or Modification.</u> This Agreement sets forth the entire understanding and agreement of the parties hereto with respect to the subject matter hereof and supersedes all prior agreements or understandings, whether oral or written, with respect to such subject matter. No provision or term of this Agreement may be amended, modified, revoked, supplemented, waived or otherwise changed except by written instrument duly executed by each of the parties hereto.

**IN WITNESS WHEREOF,** this Agreement has been duly executed and delivered as of the Effective Date.

| | |
|---|---|
| **Bunce D. Atkinson,** solely in his capacity as Trustee of the bankruptcy Estate of Brian W Mead | **Cathleen Mead, individually** |
| DocuSigned by: *[signature]* F8BB219CDF6A4DA... | DocuSigned by: *[signature]* 5112D797AB3B44D... |
| BUNCE D. ATKINSON | CATHLEEN MEAD |

Page 6 of 6